IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MIGUEL CALDERA, | § § § | |
| *Plaintiff*, | § § § | 5-18-CV-00807-DAE |
| vs. | § § § | |
| RMA RECOVERY GROUP LLC, KENNETH THOMAS., | § § § § | |
| *Defendants*. | § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Senior United States District Judge David A. Ezra:**

This Report and Recommendation concerns the Motion for Default Judgment filed by Plaintiff Miguel Caldera. *See* Dkt. No. 26. The Motion was referred for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, Caldera's Motion, Dkt. No. 26 should be **GRANTED IN PART AND DENIED IN PART** as set forth herein.

As explained below, this Report and Recommendation ORDERS Caldera to file, **within seven (7) days** from the date of this Report and Recommendation, an affidavit in compliance with the Service Members Civil Relief Act. *See* **50 U.S.C. § 3931. The failure to comply with this Order will result in an amended recommendation issued to the District Court urging that Caldera's motion for default judgment be denied and that this case be dismissed for failure to prosecute or comply with a Court order.**

1

**Factual and Procedural Background**

This debt-collection-practices case dating from 2018 has a lengthy and convoluted procedural history due to Caldera's inability to effect service and move for default judgment. The relevant factual and procedural background—though lengthy—is detailed below.

Caldera initiated this action against Defendants RMA Recovery Group LLC and 5 fictitiously named individual members or operators of the company ("Does 1-5") on August 3, 2018. *See* Dkt. No. 1. Though counseled, Caldera proceeded *in forma pauperis* (IFP). *See id.* According to Caldera, in February of 2018 and continuing into September of 2018, Defendants left him several prerecorded voicemail messages in an attempt to collect on a consumer debt that Caldera allegedly owed. *See* Amend. Compl. ¶¶ 7-9. One such voicemail went as follows:

> This is the office of RMA contacting you in regards to a pending legal notice that our office has sent to your home address. At this time, we have not received the response back. Please contact our office at 844-311-9632 to provide a statement on your behalf.

*Id.*

At no point during these messages, Caldera alleges, did Defendants disclose that they were debt collectors or that they sought to collect on a debt. *See id.* Caldera retained counsel who confirmed—after contacting Defendants—that Defendants were attempting to collect on a debt. *See id.* ¶¶ 11, 13. According to Caldera, these actions violated §§ 1692d(6) & 1692e(11) of the Fair Debt Collection Practices Act (FDCPA), and § 392.101 of the Texas Debt Collection Practices Act (TDCPA), Tex. Fin. Code § 392.101. *See id.* ¶¶ 15-17.

The Court granted Caldera leave to proceed IFP on August 7, 2018. In the IFP Order, the Court directed Caldera to—within 10 days—either: "(1) submit to the Clerk's Office a fully completed United States Marshal Service Form 285 ("USM Form"), including fully complete addresses, for each Defendant required to be served for service to be effected by the Marshal

Service by certified mail, return receipt requested; **or** (2) though counsel, request issuance of summons from the Clerk and serve each Defendant required to be served." Dkt. No. 2 at 2 (citing Fed. R. Civ. P. 4(e)(1); Tex. R. Civ. P. 106(a)(2); Tex. R. Civ. P. 103) (emphasis in original).

Caldera timely submitted his USM Form for RMA Recovery Group. But in completing the form, Caldera didn't provide any RMA Recovery Group designated agent for service of process. Instead, in the blank entitled "NAME OF INDIVIDUAL, COMPANY, CORPORATION. ETC. TO SERVE," Caldera simply wrote "RMA Recovery Group, LLC." Dkt. No. 6.[1] The Marshal's Service then used this information to serve RMA Recovery Group by certified mail. The record reflects that the summons for RMA Recovery Group was left with an unspecified individual on November 9, 2018. *See* Dkt. No. 7.

Caldera sought and obtained entry of default against RMA Recovery Group in December 2018. *See* Dkt. Nos. 8-9.[2] But Caldera didn't move for default judgment. Nor did Caldera identify the five fictitiously named Defendants. So, on February 25, 2019, the District Court directed Caldera to move for default judgment against each Defendant or risk dismissal. *See* Dkt. No. 10. Caldera in response obtained additional time to identify Does 1-5. *See* Dkt. No. 11. He then filed his Amended Complaint on April 1, 2019, adding Kenneth Thomas—the sole managing member of RMA Recovery Group—as a Defendant. *See* Amend. Compl. He didn't identify the other four fictitiously named Defendants. *See id.* Shortly after filing his Amended Complaint, Caldera requested summons be issued to Thomas, *see* Dkt. No. 13, but he didn't request that the Clerk reissue summons for RMA Recovery Group.

---

[1] The first summons issued to RMA Recovery Group was returned as "undeliverable." *See* Dkt. Nos. 4-5. Accordingly, Caldera submitted a new USM Form with an alternate address. *See* Dkt. No. 6.

[2] The Clerk also erroneously entered default against Does 1-5.

On October 31, 2019—over a year after Caldera first initiated this action and seven months after he amended his complaint—the District Court observed that Caldera hadn't served Defendants with his Amended Complaint. Accordingly, for the second time, the District Court ordered Caldera to serve Defendants within 14 days or risk dismissal. *See* Dkt. No. 20.

On November 12, 2019, summons was returned executed as to Thomas, in his individual capacity. *See* Dkt. No. 21. Thomas didn't file an answer or otherwise appear in the case, and the Clerk entered default against him on December 5, 2019. *See* Dkt. Nos. 22-23. By January 6, 2020, however, Caldera hadn't moved for default judgment against Thomas. Accordingly, once again the District Court ordered Caldera to move for default judgment against Thomas or risk dismissal of those claims. *See* Dkt. No. 24. Additionally, because it did not appear that Caldera had served RMA Recovery Group with the Amended Complaint or that Caldera had identified and served Does 1-4, the District Court dismissed those Defendants without prejudice for failure to comply with Federal Rule of Civil Procedure 4(m) and the District Court's October 31 service order. *See id.*

On January 17, 2020, Caldera moved for reconsideration of the District Court's dismissal order arguing that the Marshal Service had in fact served the company on his behalf in November 2018 when it served the Original Complaint. *See* Dkt. No. 25 (referencing docket entry no. 7). Caldera didn't object to the dismissal of Does 1-4. *See id.* Contemporaneous with his reconsideration motion, Caldera moved for default judgment against Thomas and RMA Recovery Group. *See* Dkt. No. 26.

The District Court granted Caldera's motion for reconsideration. *See* Dkt. No. 27. Because the Amended Complaint didn't assert a new claim for relief against RMA Recovery Group, the District Court reasoned that Caldera's service of the original Complaint was

4

sufficient. *See id.* Accordingly, the District Court ordered the Clerk to reinstate Defendant RMA Recovery Group as a Defendant in the action and also reinstate the December 2018 Clerk's entry of default against RMA Recovery Group. The District Court then referred Caldera's Motion for Default Judgment for a report and recommendation. *See id.* & Jan. 27 text order.

**Analysis**

A.   *Thomas Is in Default*. Defendants Thomas and RMA Recovery Group have failed to answer or otherwise defend against Caldera's claims, as demonstrated by the declaration of Caldera's attorney attached to his motions for entry of default. *See* Dkt. No. 8 & 22. The rules provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). But the obligation to answer the complaint or risk default would only have been triggered if Caldera *properly* served the defendants with process. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").[3] Caldera never properly served RMA Recovery Group. Therefore, only Thomas defaulted.

1.   *RMA Recovery Group*. The record reflects that Caldera—through the Marshal Service—served RMA Recovery Group with a copy of the Summons and original Complaint via certified mail, return receipt requested on November 9, 2018. In granting Caldera's motion for reconsideration, the District Court acted under the misapprehension (based on Caldera's representation) that this service was proper and sufficient for purposes of RMA

---

[3] *See also Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void and must be set aside under Federal Rule of Civil Procedure 60(b)(4).").

Recovery Group. That is not the case. Rather than addressing the USM Form to RMA Recovery Group's *agent* for service of process, Caldera directed the Marshal Service to serve the company itself. Caldera has not directed the Court to any rule sanctioning service on an unincorporated company by mailing the Summons and Complaint to the company itself (as opposed, for example, to an agent designated by the company to accept service of process or a company officer or manager in his capacity as an agent for the company).[4] Because Caldera has failed to demonstrate that service on RMA Recovery Group was proper, RMA Recovery Group cannot have defaulted. Without a default, Caldera cannot secure a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (discussing the requirements before a default judgment may be entered).

        2.    *Thomas*. The Clerk properly entered default against Thomas. The record reflects that Caldera served Thomas by affixing a copy of the Summons to the door of Thomas's New York dwelling on November 8, 2019, and by mailing it to the same address via First Class Mail that same day. *See* Dkt. No. 21. Thus, according to Caldera, service was effective pursuant to New York Consolidated Laws, Civil Practice Law and Rules (CPLR) § 308(4).

Under New York law, service of process must first be attempted by personal service on the defendant himself, or "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known address." CPLR § 308(1) & (2). Only where service cannot be effected in this manner through the exercise of "due diligence," may a plaintiff utilize the statute's "nail and mail" provision. *See id.* (3). Such was the case here. The process server's affidavit reflects that he attempted to personally serve Thomas at his residence on four separate

---

[4] *See* Fed. R. Civ. P. 4(h)(1) (incorporating Fed. R. Civ. P. 4(e)(1) and Tex. Bus. & Org. Code § 5.255(3)).

occasions, one time during nonbusiness hours. Such efforts constitute sufficient due diligence to authorize service under the "nail and mail" provision.[5] Caldera also strictly complied with all five nail-and-mail requirements: (1) he affixed the summons to the door of Thomas's dwelling or usual place of abode; (2) he mailed the summons to that same address; (3) the affixing and mailing occurred within 20 days of each other; and (4) he filed proof of service within 20 days of the affixing and mailing. *See Hulse v. Wirth*, 175 AD3d 1276, 1277 [2d Dept 2019] ("Jurisdiction is not acquired pursuant to CPLR 308(2) unless both the delivery and mailing requirements have been strictly complied with.").

      B.      *Default Judgment against Thomas.* Once a default has been entered, and upon a party's motion, a court may enter a default judgment. Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co.*, 84 F.3d at 141. "[A] party," however, "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks omitted). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted. *See id.*; *see also United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

---

[5] *See State of N.Y. Higher Educ. Serv. Corp. v. Starr*, 115 AD2d 828, 829, 495 N.Y.S.2d 786, 787 [3d Dep't 1985] (three attempts at service, one time after business hours constitutes due diligence); *Cf. Barnes v City of New York*, 70 AD2d 580 [2d Dept 1979], *aff'd*, 51 NY2d 906 [1980] (repeated attempts to serve a defendant at his residence only during business hours doesn't constitute due diligence).

Caldera is entitled to default judgment against Thomas because the facts alleged in the Complaint state a claim upon which relief may be granted. To state a viable claim under the FDCPA Caldera must plead: (1) he has been the object of collection activity arising from a consumer debt; (2) Thomas is a debt collector defined by the FDCPA; and (3) Thomas has engaged in an act or omission prohibited by the FDCPA. *See* 15 U.S.C. § 1692a(6); *see also Birdow v. Allen*, No. A-13-CV-709-LY, 2013 WL 4511639, at *2 (W.D. Tex. Aug. 23, 2013). A consumer is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 1692a(5). And a debt collector is defined "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). All three requirements are met here.

First, Caldera alleges that Thomas attempted to collect on a consumer debt allegedly owed by him. Amend. Compl. ¶ 7. Second, Caldera pleads that Defendants "regularly operate as third-party debt collectors and are 'debt collectors' as defined by 15 U.S.C. 1692a." *Id.* ¶ 6. Finally, Caldera alleges that Thomas either directly left him several messages in which he didn't identify himself as a debt collector or that the communication was in furtherance of collecting on a debt or that Thomas directed another person to place the calls "with the use of a script he wrote and/or authorized." *Id.* ¶¶ 8, 10. Accepting these allegations as true, the facts alleged are sufficient to state a claim for violation of §§ 1692d(6) and 1692e(11) of the FDCPA.

Caldera has similarly pled a viable claim for violation of § 392.101 of the TDCPA. According to Caldera, Thomas didn't register as a debt collector or post a surety bond with the Texas Secretary of State before engaging in debt collection,[6] as "third-party debt collectors" must do under the TDCPA. *See* Tex. Fin. Code. § 392.101. A "third-party debt collector" under the TDCPA is the same as a "debt collector" the FCPA. *See* Tex. Fin. Code § 392.001(7). Accordingly, Thomas's failure to comply with § 392.101's bond requirement amounts to a violation of the TDCPA. *See* Tex. Fin. Code § 392.403(a) (providing consumers with a private cause of action to enforce TDCPA violations).[7]

For these reasons, a default judgment against Thomas on Caldera's FDCPA and TDCPA claims is warranted. But there's a wrinkle that must be ironed out before the Court enters default judgment in Caldera's favor. Although Caldera asserts that the Service Members Civil Relief Act, *see* 50 U.S.C. § 3931, doesn't apply here, he hasn't submitted an affidavit in compliance with the Act. **Accordingly, Caldera is directed to file an affidavit that complies with the Act within seven (7) days from the date of this Report and Recommendation. The failure to comply with this order will result in an amended recommendation issued to the District Court in which it is recommended that Caldera's motion be denied and this case be dismissed for failure to prosecute or comply with a Court order.**

C.   *No Hearing Is Needed on Damages*. Damages ordinarily may not be awarded via default judgment "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if

---

[6] *See* Amend. Compl. ¶ 12.

[7] In his Motion for Default Judgment Caldera argues that Thomas's violation of § 392.101 of the Texas Finance Code amounts to a violation of § 1692e(5) of the FDCPA. *See* Dkt. No. 26 at 7. But nowhere in Caldera's live Complaint does he assert this claim. For present purposes, however, this doesn't appear to be a significant issue.

damages can be "determined with certainty by reference to the pleadings and supporting documents" and a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993) (noting that a district court has "wide latitude" in deciding whether to require an evidentiary hearing when granting default judgment). Here, Caldera doesn't request a hearing and instead seeks $1,000 in statutory damages—the maximum amount allowable per FDCPA action[8]— together with $6,140 in attorney's fees and $112 in costs for Thomas's FDCPA violations. Caldera doesn't seek actual damages under the FDCPA or damages under the TDCPA. An evidentiary hearing to determine damages is therefore unnecessary.

      *D.*     *Statutory Damages of $250*. To be eligible for statutory damages, Caldera must only establish that Thomas violated the FDCPA; he need not show actual reliance on a false representation or establish actual damages. *See Bullock v. Abbott and Ross Credit Servs., L.L.C.*, No. A–09–CV–413 LY, 2009 WL 4598330, at *3 (W.D. Tex. 2009); *Prophet v. Joan Myers, Myers & Assocs., P.C.*, 645 F. Supp. 2d 614, 617 (S.D. Tex. 2008). In determining the amount of damages to award, the Court considers "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional" 15 U.S.C. § 1692k(b)(1). An analysis of these factors reveals that an award of the statutory limit of $1,000 isn't warranted.

      According to Caldera, an award of $1,000 is appropriate because he suffered from "multiple violations." Dkt. No. 26 at 10. He further argues that because the statutory damages available under the FDCPA haven't been amended to account for inflation, "today's victims of FDCPA violations recover comparatively little in relation to the original intent of the Act." *Id.*

---

[8] *See* 15 U.S.C. § 1692k(a); *Peter v. GC Services L.P.,* 310 F.3d 344, 352 n.5 (5th Cir. 2002).

But Caldera never pled the number of times Thomas contacted him, and so the Court won't speculate on a number. It was at least once. Thomas, moreover, didn't threaten Caldera in any manner.[9] There is also no basis to conclude from Caldera's pleadings that Thomas's conduct was intentional. And, whether statutory damages under the FDCPA adequately compensate successful plaintiffs for their harms due to inflation is not for the Court to decide. For these reasons, Thomas's technical FDCPA violation warrants $250 in statutory damages. *See, e.g.*, *O'Fallon v. Protocol Recovery Serv., Inc.*, No. 2:15-CV-28-KS-MTP, 2016 WL 3248452, at *2 (S.D. Miss. Jun. 13, 2016) (awarding plaintiff $250 in statutory damages for single collection attempt on a debt that didn't exist).

  E. *Attorney's Fees*. Plaintiffs who are "successful" in bringing FDCPA claims are generally entitled to an award of reasonable attorney's fees.[10] Paralegal fees may also be recovered provided the work is "traditionally done by an attorney." *See Allen v. U.S. Steel Corp.,* 665 F.2d 689, 697 (5th Cir.1982). The lodestar method applies to the fees calculation here. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The lodestar amount is calculated by multiplying the number of hours an attorney (and his paralegal provided the work is not clerical) reasonably spent by an appropriate hourly rate. *Id*. The resulting lodestar figure is presumptively reasonable. *Id*.; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party

---

[9] *Cf. Bullock v. Abbott & Ross Credit Servs., L.L.C.*, No. A-09-CV-413 LY, 2009 WL 4598330, at *3 (W.D. Tex. Dec. 3, 2009), *report and recommendation adopted*, 2009 WL 10713334 (W.D. Tex. Dec. 22, 2009) (awarding plaintiff $1,000 in statutory damages where defendant called plaintiff at her place of employment and informed her supervisor that unless plaintiff paid off her loan, he would serve plaintiff with court papers at her office and levied the same threat in a subsequent call with the plaintiff).

[10] *See* 15 U.S.C. § 1692k. Attorney's fees, however, are not mandatory and may be denied in "special circumstances." *Davis v. Credit Bureau of the S.*, 908 F.3d 972, 977 (5th Cir. 2018) ("special circumstances" justified denial of attorney's fees where plaintiff and her counsel engaged in bad faith conduct); *Johnson v. Eaton*, 80 F.3d 148, 151 (5th Cir. 1996) (denying attorney's fees where plaintiff only demonstrated a technical FDCPA violation; she didn't prove actual damages and wasn't awarded statutory damages).

seeking fees has the burden to show the reasonableness of the hours billed and the exercise of reasonable billing judgment. *SettlePou, P.C.*, 732 F.3d at 502.

After determining the initial lodestar figure, a court may then make upward or downward adjustments. Such adjustment are based on "the relative weights" of 12 factors, known as the *Johnson* factors, provided that any such *Johnson* factor considered for an adjustment isn't already included in the initial lodestar calculation. *Id.*; *Watkins*, 7 F.3d at 457.

Here, Caldera seeks an award of $6,140 in attorney's fees, which represents $19.02 hours of work performed by his attorney and 8.6 hours of work performed by the paralegal at rates of $300 and $50 per hour respectively.[11] In support, counsel for Caldera provides a declaration detailing his qualifications and attesting to the reasonableness of the rates charged in the market, as well as a 2015-2016 United States Consumer Law Survey Report, which lists $375 per hour as the median rate for San Antonio attorneys handling credit rights cases. Counsel has also included a copy of his time records, which details the time expended in prosecuting this matter and the nature of the work performed. Some of the hours expended here are either not reasonable or noncompensable. The rate's reasonableness might also be questioned, given the tortured path this case has travelled to the modest goal of a default judgment. But this will instead be accounted for through a departure from the final fee figure, given the unusual circumstances presented.

Caldera seeks to recover fees for 1.95 hours of paralegal time spent performing clerical work such as obtaining addresses, preparing envelopes and mailing the demand letter, preparing exhibits, and setting up a litigation file. Such non-legal work is not compensable. *See*, *e.g.*, *Canaski v. MID Mississippi Props., Inc.*, No. 1:15CV344-HSO-JCG, 2017 WL 4531690, at *6 (S.D. Miss. May 17, 2017).

---

[11] Caldera has slightly miscalculated this fee; it should be $6,136 using the hours and rates provided.

Moreover, spending 3.25 hours to research New York's service law isn't reasonable. Reducing Caldera's fees to account for these unreasonable and noncompensable hours yields a lodestar of $5,063.50. Caldera hasn't requested any adjustment of the lodestar. But the Court will adjust downward under *Johnson*'s factors. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee charged for the services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *SettlePou, P.C.*, 732 F.3d at 502 n.7. Considering all the *Johnson* factors under the unique facts of this case—and keeping in mind the case's unnecessarily complex path to a default judgment as discussed throughout this recommendation and in Section G below—a fee award of $3,500 is appropriate.

F.   *Costs*. Caldera also requests an award of $112 in costs. Caldera should be awarded his costs against Thomas provided he timely files a bill of costs using the form required by the Clerk of the Court and supported by appropriate documentation. *See* Local Rule CV-54.

G.   *Proceeding Forward: Caldera's Claims against RMA Recovery Group*. Having concluded that Caldera should be entitled to default judgment against Thomas and the amount of damages, the issue of what should be done with Caldera's claims against RMA Recovery Group remains. Under the unique facts and circumstances of this case, these claims should be dismissed for failure to prosecute or comply with court orders. *See* Fed. R. Civ. P. 41(b); *Griggs v. S.G.E.*

*Mgmt., L.L.C.*, 905 F.3d 835, 844 (5th Cir. 2018) ("Rule 41(b) authorizes the district court to dismiss an action *sua sponte* for failure to prosecute or comply with a court order.").

Although a narrower scope of discretion applies because the statute of limitations would bar re-prosecution, dismissal of these claims is the proper course forward. *See Brown v. King*, 250 Fed. App'x 28, 29 (5th Cir. 2007). In the nearly *two years* this case has been pending, Caldera has yet to properly serve RMA Recovery Group. *Cf.* Fed. R. Civ. P. 4(m). He has also already been warned that failure to timely effect service would result in dismissal. *See* Dkt. No. 20. In fact, the District Court previously dismissed RMA Recovery Group without prejudice for failure to comply with Federal Rule of Civil Procedure 4(m) and its prior service order. *See* Dkt. No. 24. Although the District Court later reinstated RMA Recovery Group as a defendant in this action, this decision was based on Caldera's implicit representation that Caldera had properly served RMA Recovery Group with a Summons and copy of the original Complaint.

There is therefore both a clear record of delay and contumacious conduct, and the District Court's previous unheeded warning reflects that lesser sanctions have been employed but were futile. *See Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014) (discussing factors a court must consider where a Rule 41(b) dismissal is effectively with prejudice). Nor can Caldera's IFP status save him here. He's not proceeding *pro se*, keep in mind. And the Court previously advised Caldera that it was his obligation to submit a "fully completed" USM Form for each Defendant required to be served. *See* Dkt. No. 2. The Marshal Service simply completed its "ministerial task" of effecting service based on the information he provided. *Koumjian v. Comm'r of Soc. Sec.*, No. 4:19-CV-04443, 2020 WL 2225718, at *1 (S.D. Tex. May 7, 2020). Caldera's failure to properly effect service on RMA Recovery Group therefore lies entirely with

14

him.[12] Finally, permitting Caldera to proceed with claims that would have otherwise expired a year ago[13] would unfairly prejudice RMA Recovery Group. Accordingly, dismissal of Caldera's claims against RMA Recovery Group is warranted on this record. *See Price v. McGlathery*, 792 F.2d 472, 475 (5th Cir. 1985) ("The presence of one aggravating factor, along with a record of delay or contumacious conduct and consideration of lesser sanctions, will support a dismissal with prejudice.").

## Conclusion and Recommendation

For the reasons discussed above it is recommended that Plaintiff Miguel Caldera's Motion for Default Judgment, Dkt. No. 26, be **GRANTED IN PART AND DENIED IN PART**. Assuming Caldera timely files an affidavit in compliance with 50 U.S.C. § 3931, Caldera should be granted a default judgment against Defendant Kenneth Thomas and be awarded: (1) $250 in statutory damages; (2) $3,500 in attorney's fees; and (3) costs in an amount to be determined pursuant to the procedure specified in the Western District of Texas's Local Rule CV-54. Caldera's request for a default judgment against Defendant RMA Recovery Group LLC should be denied, and his claims against RMA Recovery Group should be dismissed.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be

---

[12] *Cf. Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987) (noting that "a plaintiff proceeding in forma pauperis is entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant").

[13] *See Rotkiske v. Klemm*, --U.S.--, 140 S. Ct. 355, 357 (2019) (citing 15 U.S.C. § § 1692k(d)).

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 9th day of July, 2020.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE